MARK W. WALLIN (SBN 331915)
mwallin@btlaw.com
MICHAEL WITCZAK (SBN 329960)
michael.witczak@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067-2904
Telephone: (310) 284-3880
Facsimile: (310) 284-3894

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

CHASE TURNER, an individual,

Plaintiff,

v.

CH ROBINSON COMPANY, INC., a Minnesota Corporation; ADAM KOTEWA, an individual; and DOES 1 to 20, inclusive,

Defendants.

Hon. Monica Ramirez Almadani
Courtroom 9B

Case No. 8:25-cv-01617-MRA-DFM

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Complaint Filed: March 18, 2024

Date Removed: July 24, 2025

## I. INTRODUCTION

Plaintiff Chase Turner ("Plaintiff") named former Defendant Adam Kotewa ("Kotewa") in the original complaint filed in this action on the ground that he was Defendant C.H. Robinson, Inc's ("C.H. Robinson" or "Defendant") managing agent responsible for developing and implementing corporate policy that governed Plaintiff's wages and work schedule. As a result, the Complaint contends Kotewa caused Plaintiff to work off-the-clock.

Defendant was suspicious of Plaintiff's motive for naming Kotewa from the onset of litigation. Plaintiff seeks to recover unpaid wages from C.H. Robinson, a large company headquartered in Minnesota. Kotewa is merely a general manager of one office for C.H. Robinson located in California. Even if Kotewa was a managing agent of C.H. Robinson (he isn't), there is no strategic benefit to naming Kotewa in the Complaint other than avoiding removal.[1] The California Labor Code allows employees to hold corporations' individual owners, officers, and managing agents liable to ensure damages can be recovered – i.e. to thwart any attempts by wealthy business owners to file bankruptcy or wind down business operations to avoid paying a hefty judgement. However, the Labor Code also requires employers to indemnify employees, such as Kotewa, for any costs incurred in litigation. Accordingly, from the time Plaintiff filed the Complaint, Plaintiff knew Kotewa would never be required

[1] As discussed further below, Plaintiff's Remand acknowledges this fact.

to pay any damages in the instant case.

During discovery, Defendant learned several key pieces of information that furthered Defendant's suspicion that Kotewa would not have been named in the Complaint but for the fact he is a California resident that spoiled complete diversity. First, Plaintiff's written discovery made it clear that Plaintiff was uninterested in prosecuting his claims against Kotewa. Plaintiff issued extensive discovery to C.H. Robinson, met and conferred over the company's responses, and ultimately propounded additional sets of written discovery to the company. However, Plaintiff issued minimal discovery to Kotewa that primarily consisted of Form Interrogatories that were inapplicable and unsuitable for employment litigation such as this case. Plaintiff also never met and conferred with Kotewa despite the fact his answers consisted of multiple objection-only responses.

Second, Plaintiff testified during his deposition that Kotewa did not, in fact, control Plaintiff's work schedule as the Complaint alleges. Plaintiff confirmed that his direct manager, Thiago Wong, was responsible for approving Plaintiff's overtime requests and managing Plaintiff's schedule. Plaintiff also testified to that he was largely free to set his own hours if he communicated his schedule to Mr. Wong. Plaintiff's deposition testimony alerted Defendant to the fact that Plaintiff never had a good faith belief that Kotewa was truly Defendant's managing agent responsible for controlling Plaintiff's work hours, which heightened Defendant's suspicion that Kotewa was only named to spoil removal.

Defendant's suspicions were eventually confirmed when Plaintiff's counsel abruptly ended Kotewa's deposition early, went off the record, and called Defendant's counsel to offer to dismiss Kotewa before completing Kotewa's deposition. Tellingly, Plaintiff's counsel offered to dismiss Kotewa on the condition that Defendant agree not to remove the case to federal court and waive any claim for fees or costs. The timing of Plaintiff's decision to dismiss Kotewa was revealing, because Plaintiff first offered to dismiss Kotewa more than 12 months after the Complaint was filed but only 12 days before Plaintiff would be forced to oppose Defendant's pending Motion for Summary Judgement that argued Kotewa could not be held personally liable for the claims alleged in the Complaint.

Plaintiff's deposition testimony refuting the Complaint's allegations against Kotewa, his abrupt decision to end Kotewa's deposition early, the fact that he voluntarily conceded Kotewa was not a proper defendant shortly before opposing a Motion for Summary Judgement, and the minimal relevant discovery conducted throughout the course of litigation made one thing clear: Plaintiff named Kotewa for the sole purpose of avoiding removal. Moreover, the arguments asserted in Plaintiff's Motion to Remand demonstrate that Plaintiff's purported justifications for dismissing Kotewa are implausible, inconsistent, and reinforce Defendant's decision to remove this case to federal court.

## II. STATEMENT OF FACTS

On March 18, 2024, Plaintiff filed a Complaint in Orange County Superior

Court alleging claims for (1) failure to pay wages; (2) failure to pay minimum wage; (3) failure to provide accurate wage statements; (4) waiting time penalties; and (5) unfair competition against Defendants C.H. Robinson Company, Inc and Adam Kotewa. (Declaration of Michael Witczak "Witczak Decl." ¶3; Exhibit 1.) The Complaint identifies Plaintiff as a resident of California, Defendant Adam Kotewa as resident of California, and Defendant C.H. Robinson as a resident of Minnesota. The Complaint further alleges defendant Adam Kotewa is a "managing agent" of defendant C.H. Robinson. (Id. at ¶4).

On or around July 23, 2024, Plaintiff served written discovery on Defendants Kotewa and C.H. Robinson. Plaintiff served Form Employment Interrogatories, General Form Interrogatories, and Requests for Production of Documents on Defendant C.H. Robinson. Plaintiff also served General Form Interrogatories and Requests for Production of Documents on Defendant Kotewa. (Id at ¶5).

Plaintiff's discovery to Kotewa consisted of one set of Form Interrogatories using Judicial Counsel of California form DISC-001, which is a form set of interrogatories that requires merely checking a box next to pre-set questions and is intended to be used in personal injury, breach of contract, or other cases involving an "alleged accident, injury, or other occurrence or breach of contract." Plaintiff's inappropriate use of form DISC-001 in the instant case is highlighted by the fact that the Judicial Counsel of California also offers the use of DISC-002, which is specifically designed for use in employment cases. Because of Plaintiff's reliance on

interrogatories designed for use in personal injury or breach of contract cases, many of the interrogatories propounded on Kotewa were unrelated to the instant litigation, such as questions about whether Kotewa had knowledge of an "INCIDENT" despite the Complaint not alleging any applicable "incidents." Plaintiff also propounded 17 Requests for Production of documents, almost all of which were focused on correspondence and communications between Kotewa and Plaintiff. (Id. at ¶6).

Accordingly, Kotewa objected to many of the questions without providing a substantive response. Despite this, Plaintiff's counsel met and conferred about Defendant C.H. Robinson's responses only. Kotewa's discovery responses were not discussed, including the requests to which Kotewa objected without providing any substantive response. (Id. at ¶7).

On May 19, 2025, Defendant filed a Motion for Summary Judgement or in the Alternative Summary Adjudication. Defendant's Motion sought, in part, to obtain summary judgment on behalf of Kotewa on the grounds he is not Defendant's managing agent. (Id. at ¶ 15; Exhibit 5.)

On May 22, 2025, Defendant deposed Plaintiff Chase Turner. On June 25, 2025, Plaintiff deposed C.H. Robinson employee Thiago Wong, who was Plaintiff's direct manager during his employment with C.H. Robinson. (Id at ¶ 8.) On July 10, 2025, Plaintiff deposed Kotewa as *both* the Person Most Knowledgeable about Turner's employment with C.H. Robinson and on behalf of himself. (Id. at ¶ 9.)

Kotewa's deposition began at 9:33 AM. From 9:33 AM until approximately

1:50 PM, Plaintiff's counsel conducted the deposition by focusing on Plaintiff's employment with C.H. Robinson, the details of Plaintiff's job duties with C.H. Robinson, and the manner in which Plaintiff's commissions were calculated. Plaintiff's counsel did not dedicate any meaningful portion of the deposition toward determining whether Kotewa was a "managing agent" capable of exercising substantial independent authority and judgment in corporate decision making in a manner that contributed to formulating C.H. Robinson's corporate policy. (Id. at ¶10; Exhibit 3.)

In fact, at approximately 1:55 PM, Plaintiff's counsel unilaterally requested to go off the record to speak to Defendant's counsel privately. Plaintiff's counsel called Defendant's counsel and offered to dismiss Kotewa from the case in exchange for an agreement not to remove the case to federal court and a waiver of fees and costs. (Id. at ¶ 11). Plaintiff's counsel then offered to end Kotewa's deposition early to reserve the right to recall Kotewa in the event Defendant did not agree to stipulate to dismiss Kotewa from the case. When asked what information Plaintiff's counsel had not yet covered during the deposition that would require recalling Kotewa, Plaintiff's counsel explained that he would only need a limited amount of additional time to inquire further into Kotewa's authority at C.H. Robinson to justify his individual liability for the claims in the Complaint. (Id. at ¶ 12.) Plaintiff's counsel ultimately suspended at the deposition at 2:22 PM and reserved the right to recall Kotewa for three additional hours. (Id. at ¶13.)

On July 21, 2025, Plaintiff filed a Joint Stipulation for the Voluntary Dismissal of Defendant Adam Kotewa With Prejudice. (Id. at ¶ 14) C.H. Robinson did not agree not to remove this matter, and thereafter did remove the case on July 24, 2025.

## III. STATEMENT OF LAW

### A. Law Governing Defendant's Removal

Plaintiff correctly observes that the 9th Circuit has not yet established a clear guideline defining the showing of "bad faith" required to remove a case to federal court more than one year after the complaint was originally filed. However, despite acknowledging this ambiguity, Plaintiff incorrectly argues Defendant must satisfy a straightforward three-part test to establish Plaintiff took action to avoid removal in bad faith. Specifically, Plaintiff argues Defendant must show (1) the timing of naming a non-diverse defendant; (2) the timing of dismissal; and (3) the explanation given for that dismissal weigh in favor of finding bad faith.

Plaintiff's analysis of this issue is overly simplistic and overlooks the core purpose of § 1446(c)(1). Courts must look to the totality of the circumstances to evaluate whether a defendant was named as an act of strategic gamesmanship with the sole purpose of avoiding removal. *Heller v. American States Insurance Company* (C.D. Cal., Mar. 25, 2016, No. CV159771DMGJPRX) 2016 WL 1170891, at *2("determining whether plaintiffs have acted in bad faith to prevent removal necessarily involves looking into the plaintiffs' subjective intent, as the text of section 1466(c)(1).") *Torres v. Honeywell, Inc.* (C.D. Cal., Jan. 25, 2021, No. 2:20-CV-

10879-RGK-KS) 2021 WL 259439, at *3. ("In determining bad faith, courts have generally inquired whether the plaintiff engaged in strategic gamesmanship designed to keep the case in state court until the one-year deadline has expired.") *Weber v. Ritz-Carlton Hotel Company*, L.L.C. (N.D. Cal., Sept. 19, 2018, No. 4:18-CV-03351-KAW) 2018 WL 4491210, at *4. ("For the bad faith exception to apply, a plaintiff's desire to stay in state court must be the but-for cause of their decision to keep a non-diverse defendant in the case past the one-year deadline for removal.")

In this context, district courts have considered various fact patterns when evaluating whether a plaintiff engaged in gamesmanship with the specific intent of avoiding removal, and the three elements addressed in Plaintiff's Remand are more properly considered *relevant factors* often weighed by courts rather than dispositive elements required to support removal. *Weber,* 2018 WL 4491210, at *4.

Notably, courts have also evaluated this issue under a two-part test focusing primarily on whether the plaintiff actively litigated against the defendant that prevented removal. "Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. . . the defendant may attempt to rebut this presumption by introducing evidence already in the defendant's possession to establish that . . . the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court." *Herrington v. Nature Conservancy* (C.D. Cal., Mar. 11, 2021,

No. CV 21-240-GW-GJSX) 2021 WL 942749, at *3 (quotations omitted); *Ceja v. Mobile Products, Inc*. (N.D. Cal., Jan. 15, 2025, No. 24-CV-07767-LJC) 2025 WL 99809, at *5 (adopting the two-step analysis adopted in *Herrington.)*

Accordingly, to determine whether a defendant was named in a complaint in bad faith, courts must look to the intent of the plaintiff, specifically whether the plaintiff named the defendant as an act of gamesmanship without genuine interest in pursuing the purported claims against that defendant. To accomplish this, courts have considered when the defendant was named in the complaint, whether the complaint asserted valid claims against the defendant, when the defendant was dismissed from the complaint, the legitimacy of the stated reasons for dismissal, whether the plaintiff actively litigated against the defendant, and whether, even if the case was actively litigated, whether the only reason the defendant was named was to avoid removal.

Here, the facts establish Plaintiff had no intent of litigating his claims against Defendant Adam Kotewa. Kotewa was named for the sole purpose of avoiding removal, and, once Plaintiff was faced with being forced to actively litigate against Kotewa, Plaintiff dismissed him scarcely more than 12 months after filing the Complaint.

**B. Law Governing Plaintiff's Purported Claims Against Adam Kotewa**

Pursuant to Labor Code section 558.1, "[a]ny . . . person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare

Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation."

The Labor Code defines "any other person acting on behalf an employer" as only "a natural person who is an owner, director, officer, or managing agent of the employer." *Id*. The term "managing agent has the same meaning as in subdivision (b) of Section 3294 of the Civil Code." Id. Section (b) of Section 3294 of the Civil Code defines "managing agent" as "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy." *Davis v. Kiewit Pacific Co.* (2013) 220 Cal.App.4th 358, 366. Kotewa does not satisfy this standard, and Plaintiff knew it.

## IV. Legal Analysis

### A. Plaintiff Named Adam Kotewa In The Complaint Solely to Avoid Removal.

The clear intent of Labor Code section 558.1, which Plaintiff relied upon to name Kotewa in the Complaint, is to hold individual business owners and executives liable for labor code violations to ensure a judgement in favor of an employee can be recovered even if the employer-entity seeks bankruptcy or pursues other means of avoiding a judgment against it. It is also well-established that California law requires employers to indemnify employees, such as Kotewa, named in a lawsuit related to alleged conduct within the scope or his or her employment. *Jacobus v. Krambo Corp.*

(2000) 78 Cal.App.4th 1096, 1100 (California law "requires the employer not only to pay any judgment entered against the employee for conduct arising out of his employment but also to defend an employee who is sued for such conduct.")

Accordingly, Plaintiff did not name Kotewa in the Complaint to benefit from the clear purpose of Labor Code section 558.1 – i.e. to ensure a judgment could be recovered from Kotewa even if C.H. Robinson made an attempt to evade its obligation to pay damages owed. Even if Plaintiff genuinely believed Kotewa was a "managing agent" that actively impacted broad corporate policy (he did not), and even if Plaintiff successfully obtained a judgment against Kotewa, Plaintiff knew Kotewa would be indemnified by C.H. Robinson for any judgment entered against him. If Plaintiff never intended to recover damages from Kotewa, then Plaintiff named Kotewa for one reason: he is a California resident that spoils removal.

Defendant anticipates that Plaintiff will rely on *Lowdermilk v. U.S. Bank National Ass'n* (9th Cir. 2007) 479 F.3d 994 to plead specific facts or allegations for the specific purpose of avoiding removal. However, Defendant does not argue the fact that Kotewa was named for the sole purpose of avoiding removal, by itself, establishes "bad faith" under § 1446(c)(1). It is merely one required element to establish bad faith. In addition to naming Kotewa for the sole purpose of avoiding removal, the litigation history in the instant case also demonstrates Plaintiff had no genuine intent to prosecute his claims against Kotewa, and Plaintiff would not have named Kotewa in the Complaint but-for the fact that Kotewa is a "removal spoiler."

**B. Plaintiff's Claims Against Kotewa are Not Valid.**

The validity of the claims asserted against a defendant also speak to whether a defendant was named in bad faith. *See, e.g., Kalfsbeek Charter v. FCA US, LLC* (C.D. Cal. 2021) 540 F.Supp.3d 939, 944 (evaluating whether Plaintiff had a valid basis for believing she had a claim against the defendant in question); *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.*, 2014 WL 1671659 at *4 (E.D. Cal. April 28, 2014) (suggesting good faith "where Plaintiff originally named a defendant against who[m] they had a **valid** cause of action at the commencement of the action.")(emphasis added); *Herrington v. Nature Conservancy* (C.D. Cal., Mar. 11, 2021, No. CV 21-240-GW-GJSX) 2021 WL 942749, at *3 (acknowledging whether the plaintiff asserted "valid claims" is considered when evaluating if a plaintiff actively litigated their case).

Here, Plaintiff's Complaint states "PLAINTIFF is informed and believes, and based thereon alleges, that Defendant KOTEWA is a managing agent of CH ROBINSON and exercised substantial independent authority and judgment in his corporate decision-making so that his decisions ultimately determine corporate policy, particularly with respect to setting CH ROBINSON's employees' (including PLAINTIFF) wages, and hours and days of work." (Exhibit 1). Beyond this cursory allegation, the Complaint does not identify the manner in which Kotewa exerted his alleged authority to control Plaintiff's wages and hours and days of work. Presumably, however, Plaintiff contends he was required to work off-the-clock, and, because

Kotewa purportedly devised the corporate policy that governing Plaintiff's work schedule, Kotewa can be held individually liable for Plaintiff's claims for unpaid wages. (Exhibit one ¶ 28, 35, 41.)

However, Plaintiff's own deposition testimony belies his pleadings thereby demonstrating he never had a good faith belief that Kotewa controlled his wages, hours, or days of work. During C.H. Robinson's deposition of Plaintiff, Plaintiff testified under oath that his direct supervisor, a C.H. Robinson employee named Thiago, oversaw Plaintiff's work schedule. Plaintiff testified that he worked off-the-clock and incurred unpaid overtime, because he worked "24/7" to service clients. (Exhibit 4). When asked why he did not record his time, Plaintiff claimed he could not work record overtime unless it was authorized. When asked who was responsible for authorizing overtime, Plaintiff explained his direct supervisor Thiago was responsible for approving overtime. (Id.) Plaintiff also explained that he had substantial flexibility to set his own work schedule so long as he worked eight hours a day. Again, his direct supervisor Thiago informed him of this policy and Plaintiff communicated directly to Thiago about what his schedule would be. (Id).

Plaintiff's deposition testimony also establishes that he was aware of the Employee Handbook that governed C.H. Robinson's overtime practices. (Id.) Similarly, Plaintiff was also aware that his commission payments were governed by the Company's written commission plan. (Ex. 5.) At no point did Plaintiff ever indicate he had any reason to believe Kotewa was responsible for creating these

policies.

Accordingly, Plaintiff's own deposition testimony directly contradicts his pleadings and establishes that Kotewa was not responsible for controlling Plaintiff's schedule or overtime requests. By his own admission, Plaintiff did not have a good faith, reasonable belief that Kotewa was a managing agent responsible for controlling his wages and work schedule at the time he filed his Complaint. Accordingly, Plaintiff's claims against Kotewa were not and never have been valid, and they were asserted in bad faith.

### C. Plaintiff Did Not Actively Litigate Against Kotewa With A Genuine Intent to Pursue His Claims Against Him.

#### 1. Plaintiff Did Not Engage in Meaningful Discovery Against Kotewa.

At the onset of litigation, Plaintiff served Kotewa a set of Form Interrogatories designed to be used in personal injury and breach of contract cases. These interrogatories focused on whether Kotewa had knowledge of or investigated the "INCIDENT" at issue in the case, despite the fact that Plaintiff's Complaint does not identify any specific "incident" of alleged wrongdoing. Similarly, Plaintiff propounded a handful of document requests that focused almost exclusively on communications and correspondence between Kotewa and Turner. Plaintiff could have, and in fact did, requested all the same documents from C.H. Robinson directly.

Because the Form Interrogatories propounded by Plaintiff on Kotewa are not suited for employment disputes, Kotewa objected to many of the requests without

providing and substantive response. Despite this, Plaintiff never met and conferred regarding any of Kotewa's discovery responses. In contrast, Plaintiff formally met and conferred for months about C.H. Robinson's discovery responses.

Moreover, Plaintiff's pro forma discovery to Kotewa did not target whether Kotewa was a "managing agent" capable of exercising substantial independent authority and judgment in their corporate decision making, which Plaintiff *must* prove if Plaintiff genuinely seeks to establish his purported claims against Kotewa. Similarly, Kotewa was deposed as C.H. Robinson's Person Most Qualified regarding Plaintiff's employment with the company and on his own behalf, but Plaintiff did not meaningfully question Turner about his authority within C.H. Robinson. Indeed, Plaintiff's counsel unilaterally ended Kotewa's deposition early and offered to dismiss Kotewa from the case *before* making a concerted effort to evaluate Kotewa's about his decision-making authority within the company.

Defendant anticipates Plaintiff will argue that merely going through the motions and propounding minimal discovery that is not targeted at the information required to prosecute his claims against Kotewa still establishes that he "actively" litigated against Kotewa. However, if Plaintiff was genuinely interested in litigating the claims alleged against Kotewa, he would have meaningfully sought to discover information necessary to prove Kotewa was a "managing agent" pursuant to the California Labor Code. Plaintiff did not, because Plaintiff only named Kotewa in the Complaint to avoid removal.

### 2. Plaintiff Purposefully Dismissed Kotewa to Avoid Opposing a Motion for Summary Judgement.

At least one district court has found a Plaintiff engaged in "active litigation" by opposing a motion for summary judgment. *Anderson v. FCA US LLC* (C.D. Cal., July 6, 2021, No. CV213125PSGJPRX) 2021 WL 2822398, at *4. Opposing a motion for summary judgment evidences good faith, because it displays an active interest in keeping a defendant involved in the case. The inverse is also true. If a plaintiff actively avoids opposing a motion for summary judgment, then it exemplifies disinterest in litigating against the defendant in at issue.

Here, Defendant filed a motion for summary judgment seeking, in part, to dismiss Kotewa from the case, and Plaintiff's Remand concedes he sought to dismiss Kotewa in order to avoid opposing Defendant's motion. Plaintiff is undoubtedly aware of the fact that choosing not to oppose Defendant's request for Summary Judgment indicates disinterest in actively litigating against Kotewa. Surely, if Plaintiff was willing to concede Kotewa was not a proper Defendant in this case, then Plaintiff also should have been willing to dismiss Kotewa within one year of filing the Complaint.

To avoid this obvious conclusion, Plaintiff's Remand relies on *Ceja v. Mobile Products*, Inc. (N.D. Cal., Jan. 15, 2025, No. 24-CV-07767-LJC) 2025 WL 99809, at *5, which determined a defendant was not named in bad faith despite the fact the plaintiff did not oppose a motion for summary judgment.

However, *Ceja* is readily distinguishable from the instant case. In *Ceja,* the plaintiff chose not to oppose summary judgement because the plaintiff obtained information in discovery demonstrating the defendant in question was not liable for the claims asserted in the complaint. *Id.* The court in *Ceja* also considered the fact that the plaintiff propounded discovery, met and conferred about the defendant's discovery responses, and the defendant provided multiple rounds of amended responses. *Id.*

None of these mitigating factors are present here. In fact, Plaintiff's Remand contends the information learned in discovery *confirms* Kotewa is Defendant's managing agent. Moreover, Plaintiff did not meet and confer regarding Kotewa's discovery responses, which requests were wholly unrelated to the issues Plaintiff was required to prove in order to hold Kotewa liable, request amended responses, or otherwise make a genuine effort to obtain the information required to actively prosecute his claims against Kotewa.

In *Ceja,* the plaintiff had a good faith belief that the defendant might have been liable for the claims asserted. Through discovery, the *Ceja* plaintiff eventually determined the defendant should be dismissed. Here, Plaintiff never had a good faith belief that Kotewa was personally liable for the allegations in the Complaint, and Plaintiff did not learn any new information to disabuse him of an otherwise reasonable belief Kotewa was a proper defendant.

Plaintiff's decision to concede Kotewa was not properly named in the case by

not opposing Defendant's Motion for Summary Judgement coupled with Plaintiff's attempt to condition dismissal on Defendant's agreement not to remove the case to federal court further evidences that Kotewa was only named in the Complaint to avoid removal.

**D. The Remaining Factors Addressed in Plaintiff's Remand to Not Weigh in Favor of Good Faith.**

As discussed previously herein, Plaintiff's Remand incorrectly argues this Court should only consider three isolated factors rather than analyzing the totality of the circumstances to determine whether Plaintiff would not have named Kotewa in the Complaint but for the fact Kotewa prevented removal. Plaintiff relies on several district court opinions that suggest a defendant was not named in bad faith if (1) the defendant was named at the onset of litigation; (2) the defendant was dismissed at any 12 months after the complaint was filed; and (3) if the defendant provides a reasonable explanation for the decision to dismiss the defendant. Each point is addressed in turn below.

**1. The Fact Kotewa was Named at the Onset Of Litigation Does Not Evidence Good Faith.**

Plaintiff relies on several district court cases that conclude naming a defendant when the complaint is first filed weighs in favor of good faith. However, those cases do not consider facts analogous to those at issue in the instant case. Namely, the the

Complaint contends Kotewa controls Plaintiff's wages and schedule, and, as a result, Kotewa personally controlled Plaintiff's work schedule in a manner that caused Plaintiff to work off-the-clock. However, Plaintiff's testimony demonstrates that Plaintiff had discretion to make his own work schedule, Plaintiff's direct supervisor Thiago Wong was responsible for monitoring Plaintiff's work schedule, and Plaintiff's overtime requests were approved by Thiago Wong. (Ex. 2.) This was confirmed in Kotewa's deposition. (Ex. 3.)

Accordingly, Plaintiff had no reason to believe Kotewa controlled Plaintiff's work schedule at the time he filed his Complaint. The fact that Plaintiff named Kotewa in the Complaint at the onset of litigation cannot evidence good faith if Plaintiff did not have a reasonable good faith belief Kotewa was a proper defendant when the Complaint was filed.

**2. The Timing of Dismissal Does Not Weigh in Favor of Good Faith.**

Plaintiff relies on several district court cases that suggest a defendant can be named in good faith even if that defendant is conspicuously dismissed just after the one-year anniversary of the case being filed. Tellingly, Plaintiff contends *Kalfsbeek Charter v. FCA US, LLC* (C.D. Cal. 2021) 540 F.Supp.3d 939, 944 supports this claim despite the fact that the court in *Kalfsbeek* explains the fact the defendant was dismissed from the case one year and five days after the case was filed was one of "several factors [that] weigh in favor of a finding of bad faith." The fact that *Kalfsbeek*

ultimately concludes the defendant was not named in bad faith illustrates an important point: whether a defendant is dismissed just over 12 months after filing the complaint is just one factor considered by courts in the central district, and it is rarely dispositive.

Notably, here, Defendant does not argue that the timing of Plaintiff's decision to dismiss Kotewa suggests bad faith solely because it was dismissed close to a year after the Complaint was originally filed. Rather, Defendant contends the timing of Plaintiff's decision to dismiss Kotewa evidences bad faith because Plaintiff dismissed Kotewa in a concerted effort to avoid opposing Defendant's Motion for Summary Judgement. The fact that Plaintiff became motivated to dismiss Kotewa after one year passed from the filing of the complaint *and* before he was required to oppose Defendant's Motion for Summary Judgement demonstrates Plaintiff was willing to concede Kotewa was not properly named in the Complaint but only after it became more difficult for Defendant to remove the case to federal court. This fact pattern, in its totality, weighs in favor of bad faith.

**3. Plaintiff Provides Inconsistent and Implausible Reasons for Dismissing Kotewa.**

To determine whether a defendant was named in bad faith, courts typically look to whether the plaintiff's stated justification for dismissal is "consistent and plausible." *Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC* (S.D. Cal., Dec. 11, 2014, No. 14CV01856 WQH BLM) 2014 WL 7175598, at *5; *Weber v. Ritz-Carlton Hotel Company, L.L.C.* 2018 WL 4491210, at *4; *Heller v.*

*American States Insurance Company* 2016 WL 1170891, at *3 (finding bad faith when the plaintiff provided inconsistent reasons for the timing of dismissal.)

Here, Plaintiff provides contradicting reasons for dismissing Kotewa more than 12 months after filing the Complaint. First, Plaintiff contends the evidence gathered in discovery does actually supports Plaintiff's claim that Kotewa was Defendant's managing agent that controlled Plaintiff's working hours. Plaintiff argues this bold claim is supported by deposition testimony provided by Plaintiff's direct supervisor Thiago Wong, deposition testimony provided by Kotewa, and the declaration Kotewa submitted in support of Defendant's Motion for Summary Judgement.

Notably, Plaintiff does not actually provide the court with this alleged testimony, almost certainly because a genuine review of the transcripts reveals this contention is unsupported by the record. Thiago Wong testified that Kotewa did *not* set employees' working hours during Plaintiff's employment, because Defendant did not have set working hours at that time. (Ex. 2). Mr. Wong further testified that Defendant has a "corporate department that manages policies at C.H. Robinson" and Kotewa was responsible for managing the policies established by C.H. Robinson's corporate office within C.H. Robinsons California office location. *Id.*

Kotewa's deposition testimony both confirms Mr. Wong's understanding of how corporate policies are formed and enforced and provides further insight. Kotewa confirmed Plaintiff's direct manager, Mr. Wong, was responsible for approving Plaintiff's overtime requests. (Exhibit 3.) Kotewa further explained that Defendant's

Human Resource, the legal department, and a "war room of executives" are responsible for creating Defendant's compensation packages, and those packages are shared in advance to employees, such as Kotewa, in leadership positions. *Id.* Kotewa explicitly testified that he did not even have an opportunity to comment on Plaintiff's compensation package, and, even if he did, there is no reason to believe the "war room of executives" responsible for developing the package would consider his comment. *Id.*

Next, Plaintiff's claim that the declaration Kotewa submitted in support of the Motion for Summary Judgement somehow supports the conclusion Kotewa is Defendant's managing agent is perplexing. Kotewa's declaration unequivocally states:

> I am not responsible for creating, implanting, designing, or approving C.H. Robinson's wage and hour policies, including the company's commission policies, wage payment policies, time keeping policies, bonus policies, or expense reimbursement policies. I was also not responsible for determining Mr. Turner's wages, calculating any commission or bonus payments owed to him, or deciding how much commission should have been paid to Mr. Turner for any specific commission payment.

(Exhibit 5.)

To prove Kotewa was Defendant's managing agent, Plaintiff must demonstrate Kotewa possessed "substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy." There is no evidence on record even suggesting Kotewa possessed the requisite authority,

and Plaintiff's arguments to the contrary are dubious, at best[2].

Notwithstanding Plaintiff's misrepresentation of the record, the fact Plaintiff contends the evidence supports a finding that Kotewa is Defendant's managing agent directly contradicts Plaintiff's stated reason for voluntarily dismissing him. Plaintiff claims Kotewa was dismissed due to the "practical consideration of avoiding potential liability for his litigation costs" if Kotewa prevailed on summary judgement. In other words, Plaintiff simultaneously argues Plaintiff possess evidence sufficient to defeat Defendant's request for summary judgement, yet Plaintiff chose to dismiss Kotewa because Kotewa was likely to prevail on summary judgement. These contradictory arguments are hard to square. *Cf. Ceja v. Mobile Products, Inc.*, 2025 WL 99809, at *5 (a plaintiff's decision not to oppose summary judgement did not evidence bad faith because the plaintiff learned information in discovery that demonstrated plaintiff could *not* successfully oppose the motion.)

Plaintiff provides additional inconsistent reasoning for dismissing Kotewa. Plaintiff claims his decision to dismiss Kotewa was "grounded in an evaluation of witness credibility" because a jury was unlikely to hold Kotewa liable for the claims in the Complaint "despite the evidence of his authority and involvement." However, according to Plaintiff, the "evidence of his authority and involvement" is Kotewa's own deposition testimony. Apparently, Plaintiff believes Kotewa's deposition

[2] Assuming, *arguendo,* the record did suggest Kotewa might be a managing agent, Plaintiff's testimony confirmed Plaintiff had no reason to believe this at the time the Complaint was filed.

testimony proves his liability, but Kotewa was dismissed because he is a credible witness. If Kotewa is credible and his deposition testimony proves his liability, then wouldn't Plaintiff want Kotewa to testify at trial? The only reason Plaintiff wouldn't want a credible witness to provide testimony proving the claims asserted in the complaint is because Plaintiff has no genuine interest in prosecuting those claims.

Finally, Plaintiff also argues he dismissed Kotewa because including an individual defendant in a wage and hour case could cause "jury confusion" regarding damages and because C.H. Robinson's liability was "clearer and more substantial." Ultimately, Plaintiff determined dismissing Kotewa would "present a cleaner case for the jury." Tellingly, none of these supposed strategic considerations were uncovered during litigation – they were all true at the time the Complaint was filed. From the inception of this case, Plaintiff knew prosecuting his claims against Kotewa would be a nuisance at trial. If anything, Plaintiff's argument only bolsters the fact that Kotewa was named for the sole purpose of avoiding removal, and Plaintiff always intended on dismissing him.

**E. Plaintiff Fails to Meet His Burden to Recover Attorneys' Fees.**

In an attempt to further gaslight C.H. Robinson and the Court, Plaintiff seeks to recover attorneys' fees associated with his decision to file a Motion to Remand. As explained by the Supreme Court, "absent unusual circumstances courts may award attorney fees under the attorney fee provision of the removal statute only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*

*v. Franklin Capital Corp*. (2005) 546 U.S. 132[3]. "Removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.* (9th Cir. 2008) 518 F.3d 1062, 1065.

District Courts have acknowledged this high burden and routinely deny requests for attorneys' fees when removal is sought under section 1446(c)(1). *See, e.g., Torres v. Honeywell, Inc*., 2021 WL 259439, at *3 ("Although the Court disagrees with [defendant's] assessment, Avco appears to have had at least some reasonable basis for its position."); *Hamilton San Diego Apartments, LP v. RBC Capital Markets, LLC* (S.D. Cal., Dec. 11, 2014, No. 14CV01856 WQH BLM) 2014 WL 7175598, at *6. ("Although Defendant has not met its burden of establishing bad faith, the Court finds that RBC had an objectively reasonable basis for seeking removal. Plaintiff's request for attorney fees is denied.") There is a particularly high burden for cases removed pursuant to section 1446(c)(1), because the 9th Circuit has not clarified the standard for "bad faith." *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co*., 2014 WL 1671659, at *8; *Ceja v. Mobile Products, Inc.*, 2025 WL 99809, at *8.

The only case Plaintiff presents that determined the defendant removed the case

---

[3] Plaintiff's Remand erroneously attempts to rely on *Moore v. Permanente Med. Grp., Inc.,* 981 F. 2d 443, 447 (9th Cir. 1992) to suggest the proper standard related to whether a removal was "sought for the purpose of prolonging litigation and imposing costs on the opposing party" despite the fact that the Supreme Court clarified the proper standard 13 years later in *Martin.*

to federal court on "objectively unreasonable grounds" is *Angus v. John Crane Inc.* (N.D. Cal., Aug. 22, 2016, No. 16-CV-03532-JST) 2016 WL 4423379, at *2. In *Angus*, the court determined the removing defendant acted in bad faith because the case was removed just four days prior to the commencement of trial. Plaintiff does not (and cannot) make that argument here. Instead, Plaintiff argues Defendant sought removal in an improper effort to extend its deadline to file a motion for summary judgement. As evidence for this improper motive, Plaintiff points to the fact that the trial court denied Defendant's request to extend Defendant's deadline to file a motion for summary judgement.

Plaintiff's purported evidence of bad faith is perplexing. Defendant timely filed a Motion for Summary Judgement on May 19, 2025. Surely, Defendant did not file the instant removal two months *after* filing a Motion for Summary Judgement to improperly delay its deadline to file a Motion for Summary Judgement.

Plaintiff also argues Defendant wants a "second bite at the apple" on its "defective" Summary Judgement Motion in state court by litigating the case in federal court. Defendant certainly does not consider its Motion "defective." Plaintiff appears to believe Defendant wants to re-file after engaging in additional discovery. However, Plaintiff overlooks the fact that Defendant's motion for summary judgement is not fact intensive, which is why this case is suitable for summary judgement in the first instance. The core dispute at issue is the calculation of Plaintiff's commission payments. This dispute is, by law, one of contract interpretation. Accordingly,

Defendant had sufficient evidence to file its motion at the time it was filed, because defendant possessed the contract governing Plaintiff's commission payments at the time it was filed.

Moreover, Plaintiff's argument is undercut by the fact that Defendant filed the Notice of Removal as quickly as possible after Kotewa was dismissed. The trial court ordered Kotewa dismissed from the case on July 22, 2025, and Defendant filed its removal on July 24, 2025. Defendant could not have filed the removal any sooner, and removing the case is quickly as possible does not evidence intent to delay.

Finally, Plaintiff offers no argument supporting the claim that Defendant's reasons for removal are objectively unreasonable. Defendant has provided the following reasonable grounds for removing the instant matter: (1) Plaintiff's Complaint claims Kotewa is a "managing agent" of Defendant because Kotewa purportedly controlled Plaintiff's wages and work schedule; (2) Plaintiff's deposition testimony contradicts the purported justification for naming Kotewa and demonstrates Plaintiff never had a good faith belief that Kotewa controlled Plaintiff's wages or work schedule; (3) Plaintiff never meaningfully attempted to determine whether Kotewa could reasonably be considered Defendant's managing agent in discovery; (4) Plaintiff conceded Kotewa was not a proper Defendant when faced with a motion for summary judgment; and (5) Plaintiff's stated reasons for dismissing Kotewa are inconsistent and implausible. These facts, at a minimum, establish reasonable grounds to seek removal. *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.* 2014

WL 1671659, at *8 (holding there was reasonable grounds to seek removal when minimal discovery was propounded against the defendant and the defendant was dismissed 15 months after the complaint was filed); *Torres v. Honeywell, Inc.* 2021 WL 259439, at *3 (denying a request for attorneys' fees because the removing party appeared to have "at least some reasonable basis" for removal). These facts create a totality of circumstances that support removal when considered in aggregate. C.H. Robinson, as a non-resident organization, is merely seeking to vindicate its rights under section 1446(c)(1) to have a federal court adjudicate this matter.

## V. CONCLUSION

As demonstrated herein, Plaintiff's sole motivation for including Defendant Kotewa in this action was to avoid removal. He then failed to prosecute his purported claims against Kotewa, waiting instead unit the last minute to dismiss Kotewa from the case. If it looks like a duck and quacks like a duck, it is a duck. Plaintiff's conduct is evidence of bad faith. For the reasons stated herein, Defendant respectfully requests that the Court deny Plaintiff's Motion to Remand.

Dated: September 15, 2025

/s/ *Mark W. Wallin*
Mark W. Wallin
Michael P. Witczak
Attorneys for Defendant C.H. Robinson Company, Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendant C.H. Robinson Company, Inc. certify that this brief contains less than 7,000 words which complies with the word limit of L.R. 11-6.1

Dated: September 15, 2025 /s/ *Mark W. Wallin*

Mark W. Wallin